UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00444-CAS-SKx | Date | August 31, 2026 |
| Title | Tiana Marquardt et al v. Blue Jay Transit, Inc. et al | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| | | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Michael Manapol | Scott LaSalle |

**Proceedings:** ZOOM HEARING RE: DEFENDANT THIRD LANE MOBILITY, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) (Dkt. 36, filed on July 2, 2026)

## I. INTRODUCTION

On October 8, 2025, plaintiff Tiana Marquardt ("plaintiff") filed this action in Los Angeles County Superior Court against defendants Bird Rides, Inc. ("Bird Rides"), Blue Jay Transit, Inc. ("Blue Jay"), Third Lane Mobility, Inc. ("Third Lane"), and Does 1 through 100, inclusive, (collectively, "defendants"). Dkt. 1-2 ("Compl."). Plaintiff asserts six claims for relief: (1) strict liability based on manufacturing defect; (2) strict liability based on design defect; (3) strict liability based on failure to warn; (4) products liability negligence; (5) negligence; and (6) breach of implied warranty. Compl. at ¶¶ 33-117.

On January 15, 2026, Blue Jay removed this action to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1442, on the basis of diversity jurisdiction. Dkt. 1. On January 22, 2026, Blue Jay filed an answer to the complaint. Dkt. 9.

On February 17, 2026, plaintiff filed a motion to remand. Dkt. 16.

On February 17, 2026, Blue Jay filed a motion to dismiss for lack of jurisdiction, improper venue, or in the alternative, for *forum non conveniens*. Dkt. 17.

On March 23, 2026, the Court denied plaintiff's motion to remand,[1] denied Blue Jay's motion to dismiss without prejudice to a timely motion for judgment on the pleadings, and ordered plaintiff to file a status report as to its diligence and efforts in effectuating service on Third Lane. Dkt. 27. On April 22, 2026, plaintiff filed the status report. Dkt. 29. On May 27, 2026, plaintiff filed a copy of the waiver of service executed by Third Lane. Dkt. 33.

On July 2, 2026, Third Lane filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), or in the alternative, to transfer venue pursuant to 28 § U.S.C. 1404(a). Dkt. 36 ("Mot."). On July 27, plaintiff filed an opposition. Dkt. 37 ("Opp."). On August 3, 2026, Third Lane filed a reply. Dkt. 41 ("Reply").

On August 31, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Parties

Plaintiff alleges that she is an individual residing in Sonoma County in the state of California. Compl. ¶ 4.

Plaintiff alleges that Bird Rides is a corporation organized under the laws of Delaware with its principal place of business in West Hollywood, California. Id. ¶ 5. Plaintiff alleges that Bird Rides is engaged in the business of designing, manufacturing, and distributing electric scooters and related parts and components thereof, as part of its micromobility transit services in metropolitan areas across the United States, Canada, Europe, and the Middle East. Id. Plaintiff alleges, upon information and belief, that Bird Rides is a wholly owned subsidiary of Blue Jay and/or Third Lane. Id.

Plaintiff alleges that Blue Jay is a corporation organized and existing under the laws of Delaware with its principal place of business in West Hollywood, California. Id. ¶ 6. Plaintiff alleges that Blue Jay is authorized to do, has regularly done, and is doing business on a regular basis in California, and is engaged in the business of providing

[1] On July 29, 2026, the Court dismissed Bird Rides, Inc. pursuant to the Court's finding that Bird Rides, Inc. is fraudulently joined. Dkt. 40.

micromobility transit services to the public in cities across the United States, Canada, Europe, and the Middle East. Id. Plaintiff alleges, upon information and belief, that Blue Jay is a wholly owned subsidiary of Third Lane, who owns and controls the entities that deliver, operate, and maintain Bird electronic scooters for use by the public in various cities across the United States, Canada, Europe, and the Middle East. Id.

Plaintiff alleges, upon information and belief, that Third Lane is a corporation organized and existing under the laws of the province of Ontario, Canada, with its principal place of business in Toronto, Ontario. Id. ¶ 7. Plaintiff alleges that Third Lane is the parent company of Bird Rides and Blue Jay, and that Third Lane is one of the largest micromobility operators in the world.

Throughout the complaint, plaintiff refers to Bird Rides, Blue Jay, and Third Lane collectively as "Bird." Id. The Court refers to Bird Rides, Blue Jay, and Third Lane as the "named defendants."

Plaintiff alleges that the named defendants and Does 1 through 100 created, designed, manufactured, owned, operated, directed, controlled, distributed, supplied, advertised, promoted, leased, rented, allowed and permitted for bailment, use and operation by the public, electric scooters for public transportation in cities across the United States. Id. ¶ 9. Plaintiff alleges that at all relevant times, the named defendants and Does 1 through 100 maintained dominion, control, management, ownership, supervision and coordinated all activity related to safety, control and operation of Bird electric scooters across the United States where the named defendants are licensed to operate. Id.

Plaintiff alleges, upon information and belief, that at all relevant times, all defendants, including the doe defendants, were corporations, business entities, associations, partnerships, joint ventures, successors-in-interest, and/or individuals residing and conducting business in Los Angeles County. Id. ¶ 10.

Plaintiff alleges, upon information and belief, that at all relevant times, the named defendants and Does 1 through 50 designed, manufactured, engineered, and/or distributed electric scooters for use by the public in cities throughout the United States, including Memphis, Tennessee. Id. ¶ 11. Plaintiff alleges, upon information and belief, that at all relevant times, the named defendants and Does 51 through 100 delivered, managed, and

maintained electric scooters for use by the public in Memphis, Tennessee and other U.S. cities, through the Bird Platform. Id. ¶ 12.

### B. Named Defendants’ Business

Plaintiff alleges that the named defendants provide electric scooters for public transportation through a smartphone application (“Bird Platform”) created, engineered, and maintained by them. Id. ¶ 8. Plaintiff alleges that “Bird” is organized and principally functions as a transportation company, actively conducts business as a common carrier, which transports people around several cities in the United States, including Los Angeles, California, and Memphis, Tennessee on electric scooters. Id. Plaintiff alleges that none of the scooters transport people across state lines or engage in interstate commerce. Id.

Plaintiff alleges that consumers have the option to rent bikes or electric scooters through the Bird Platform to ride to their destination in any of the several municipalities where the named defendants are licensed to operate within the United States, Canada, Europe, and the Middle East. Id. ¶ 9.

### C. October 9, 2024 Incident in Memphis, Tennessee

Plaintiff alleges that on or about October 9, 2024, plaintiff rented an electric Bird scooter (“Subject Scooter”) through the Bird Platform in Memphis, Tennessee, while visiting the city with her fiancé. Id. ¶ 18. Plaintiff alleges that while riding at a reasonable speed, obeying all applicable traffic rules for electronic scooters, and operating the vehicle in accordance with its instructions, the Subject Scooter’s braking system, without warning, catastrophically failed, causing plaintiff to fall from the Subject Scooter and sustain severe bodily injuries. Id.

Plaintiff alleges that the Subject Scooter and Bird Platform were owned, operated, designed, engineered, manufactured, marketed, promoted, warranted, sold, imported, distributed, inspected, maintained, and/or controlled by the named defendants and Does 1 through 100. Id. ¶ 19. Plaintiff alleges, upon information and belief, that before and at the time of the subject incident, Bird Rides, Blue Jay, and Does 51 through 100 were authorized by the City of Memphis to distribute, operate, maintain, and rent electric scooters to the public to use in the city. Id. ¶ 20.

Plaintiff alleges, upon information and belief, that the Subject Scooter's braking system was defectively designed, manufactured, and/or lacked adequate warnings of the defective brakes so as to render the Subject Scooter unreasonably dangerous when used as intended and/or in a reasonably foreseeable manner. Id. ¶ 21. Plaintiff alleges, upon information and belief, that she was injured as a result of the defective braking system on the Subject Scooter. Id. ¶ 22. Plaintiff alleges that defendants received numerous customer complaints and internal service reports documenting brake failures on Bird-branded scooters, including several complaints received by defendants' predecessor, Bird Global, Inc., when it was defending hundreds of personal injury claims arising from defective and/or malfunctioning brakes on Bird-branded scooters before it entered bankruptcy. Id. Plaintiff alleges that defendants failed to repair affected scooters, recall them, or remove them from service when defendants continued to operate the same Bird-branded scooter fleet, Bird Platform, and maintenance infrastructure that it purchased out of Bird Global, Inc.'s bankruptcy several months before the subject incident. Id.

Plaintiff alleges that she used the Subject Scooter as intended and/or in a reasonably foreseeable way. Id. ¶ 23. Plaintiff alleges that, at all relevant times, the Subject Scooter was under the supervision, care, and/or control of defendants. Id. ¶ 24.

Plaintiff alleges that the Subject Scooter failed to function safely, causing the subject incident and plaintiff's injuries, due to defendants' acts, omissions, and/or negligence. Id. ¶¶ 25, 26.

### D. Plaintiff's Attempt to Negotiate the Claim

Plaintiff alleges that, through her counsel, she provided written notice of a claim to Blue Jay and received an acknowledgment through an automated response. Id. ¶ 31. Plaintiff alleges that she attempted to engage in a good faith pre-suit negotiation process, but "Bird" failed to engage in any negotiation of the claim or make the Subject Scooter available for inspection. Id. Plaintiff alleges that "Bird's" failure to reasonably engage in its own pre-arbitration negotiation process is a violation of "Bird's" so-called Rental Agreement and is a breach of a covenant promised to users, rendering the arbitration clause void. Id. ¶ 32. Plaintiff alleges that "Bird" failed to attempt to engage in this condition precedent to the rental agreement dispute resolution, and plaintiff alleges that she has been unfairly prejudiced because "Bird" did not comply with its own agreement, requiring plaintiff to file a lawsuit or lose her rights to a cause of action. Id.

## III. LEGAL STANDARD

### A. Rule 12(b)(2) Motion

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant submits evidence controverting the allegations, however, the plaintiff may not rely on its pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977)).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154-55 (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state and federal law are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities."

Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id. (finding no general jurisdiction when the corporation was not registered or licensed to do business in California, paid no taxes, maintained no bank accounts, and targeted no advertising toward California).

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and must do so to establish specific jurisdiction. Schwarzenegger, 374 F.3d at 802.

If the plaintiff establishes the first two prongs, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) "the extent of the defendant's

purposeful injection into the forum"; (2) the burdens on defendant from litigating in the forum state; (3) "the extent of conflict with the sovereignty of the defendant's state," (4) "the forum state's interest in adjudicating the dispute"; (5) "the most efficient judicial resolution of the controversy"; (6) "the importance of the forum to the plaintiff's interest in convenient and effective relief"; and (7) "the existence of an alternative forum." Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir. 1995).

### B. Motion to Transfer Venue Pursuant to U.S.C. § 1404(a)

A district court where venue is proper "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" if such a transfer is "[f]or the convenience of parties and witnesses," and "in the interest of justice." 28 U.S.C. § 1404(a). Section 1404(a) was "designed as an attempt to statutorily embody and modify the doctrine of *forum non conveniens*." A.J. Industries, Inc. v. United States District Court, 503 F.2d 384, 386 (9th Cir. 1974). However, unlike the doctrine of *forum non conveniens*, Section 1404(a) results in transfer rather than dismissal where an alternative venue better serves considerations of convenience and justice. See Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955) ("The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in [Section] 1404(a) for transfer."). Moreover, district courts have "more discretion to transfer under § 1404(a) than . . . to dismiss on grounds of *forum non conveniens*." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981).

In deciding a motion to transfer, the Court must consider the following three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a); see Los Angeles Mem'l Coliseum Comm'n v. NFL, 89 F.R.D. 497, 499 (C.D. Cal. 1981).

In analyzing the "interests of justice," a number of factors are relevant, including the following: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988); Jones v. GNC

Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). Other factors that can be considered are: the enforceability of the judgment; the relative court congestion in the two forums; and which forum would better serve judicial economy. 17 Moore's Federal Practice § 111.13[1][c] (3d ed. 1997).

However, "[s]ubstantial weight is accorded to the plaintiff's choice of forum, and a court should not order a transfer unless the 'convenience' and 'justice' factors set forth above weigh heavily in favor of venue elsewhere." Catch Curve, Inc. v. Venali, Inc., 2006 U.S. Dist. LEXIS 96379, *3-4 (C.D. Cal. 2006).

The party seeking to transfer venue bears the burden of showing that convenience and justice require transfer. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 278-279 (9th Cir. 1979); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). The decision to transfer lies within the sound discretion of the trial judge. See Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir. 1988); see also Savage, 611 F.2d at 279 ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

## IV. DISCUSSION

Third Lane moves to dismiss plaintiff's claims on the grounds that this Court lacks personal jurisdiction over it. Mot. at 2-5. Third Lane argues that plaintiff cannot establish general or specific jurisdiction. Id. In the alternative, Third Lane argues that the Court should, in the "interest of justice," transfer the case to the Western District of Tennessee pursuant to 28 U.S.C. § 1404(a). Id. at 2.

### A. General Jurisdiction

Third Lane argues that the Court lacks general jurisdiction over it because it is not incorporated in California, nor does it maintain its principal place of business in California. Id. at 3-4.

Plaintiff in her opposition does not appear to contest that the Court lacks general jurisdiction over Third Lane. See generally Opp. Accordingly, the Court finds that it lacks general jurisdiction over Third Lane.

**B. Specific Jurisdiction**

1. Parties' Arguments

Third Lane further argues that the Court lacks specific personal jurisdiction over it because plaintiff cannot demonstrate that Third Lane purposefully directed any activities toward California or that her claims arise out of any conduct by Third Lane in California, as the incident underlying her claim occurred in Tennessee. Mot. at 4-5.

In opposition, plaintiff asserts that this Court has specific personal jurisdiction over Third Lane because: (1) Third Lane purposefully availed itself of California by acquiring and operating Bird Rides in California; (2) plaintiff's claims arise out of or relate to Third Lane's enterprise-level conduct in California; and (3) Third Lane cannot demonstrate that jurisdiction is unreasonable. Opp. at 7-11.

First, plaintiff contends that Third Lane acquired the assets of Bird Rides, built and headquartered in California. Opp. at 7 (citing Compl. ¶¶ 5, 8; dkt. 37-1 ("Manapol Decl.") ¶ 9, Ex. C). Plaintiff asserts that Third Lane then continued that enterprise under the same brand, the same platform, and the same fleet, through subsidiaries that Third Lane owns. Id. Plaintiff alleges that Third Lane also founded a California LLC—Blue Jay Transit CFM LLC, managed by Third Lane's two co-chief executives out of its Toronto headquarters, with a California agent for service of process—to facilitate E-vehicle rentals through a smart phone application. Id. at 8 (citing Manapol Decl. ¶¶ 6-8, Exs. A, B). Plaintiff argues that the complaint contains sufficient agency and control allegations and these allegations are uncontroverted by the "defective and conclusory Lyons Declaration."[2] Id. at 9.

Second, Plaintiff asserts that the entities which Third Lane owns and controls continued to deploy scooters with known brake defects, without repair, recall, or warning, through the same platform and maintenance infrastructure acquired from the California-built Bird enterprise. Id. at 9 (citing Compl. ¶¶ 19, 22).

Third, plaintiff contends it is not unreasonable for Third Lane to proceed in this forum because: (1) it voluntarily injected itself into this proceeding in this forum by consenting to removal here before it had been served; (2) Third Lane's wholly owned

[2] Plaintiff refers to Dkt. 36-3 ("Lyons Decl.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00444-CAS-SKx | Date | August 31, 2026 |
| Title | Tiana Marquardt et al v. Blue Jay Transit, Inc. et al | | |

subsidiary (i.e., Blue Jay) has already litigated in this forum for six months by the same counsel who now represents Third Lane; (3) litigating in California imposes no burden materially different from litigating in Tennessee; (4) California has an interest in providing redress to its injured resident; and (5) plaintiff's own interest in convenient and effective relief is at its apex in her home state. Id. at 10 (citing Dkt. 3, Manapol Decl. ¶ 13).

Plaintiff argues that if the Court concludes that the present record leaves the jurisdictional question in doubt, she is at minimum entitled to jurisdictional discovery. Id. Plaintiff also alleges the Lyons Decl., which Third Lane relies upon, is not competent evidence because it is sworn under penalty of perjury under "the laws of the State of California," rather than under the "laws of the United States of America," as required by 28 U.S.C. § 1746(1). Id. at 6 (citing Lyons Decl.).

In reply, Third Lane argues that plaintiff may not rely on allegations of Third Lane's generalized Bird-related activities in California to establish specific jurisdiction. Reply at 6. Third Lane argues that to permit plaintiff to do so would moot the limitations of specific jurisdiction by allowing a defendant to be sued in every state where it allegedly markets similar products, regardless of the location of the product, the location of the injury, or the forum's relationship to the alleged misconduct. Id.

Third Lane also argues that plaintiff cannot rely on the alleged activities of a separate corporate entity (e.g., Blue Jay Transit CFM LLC) to manufacture a jurisdictional connection between Third Lane and California. Id. Third Lane contends that Blue Jay Transit CFM LLC is a separate entity and argues that plaintiff has failed to show that it is an alter ego of Third Lane. Id. at 7-8.

Third Lane avers that plaintiff's challenge to the Lyons Decl. fails to create a factual dispute as to Third Lane's contacts with California because plaintiff does not contradict the testimony contained therein that Third Lane has not conducted business in California, maintained operations in California, or otherwise directed activity toward California sufficient to establish personal jurisdiction. Id. at 8 (citing Lyons Decl. A ¶¶ 5-6). Rather, according to Third Lane, plaintiff relies solely on allegations concerning the conduct of separate Bird-related entities. Id. Finally, Third Lane argues that regardless of plaintiff's objections to the form or execution of the Lyons Decl., plaintiff fails to create a genuine dispute of material jurisdictional facts. Id. at 9.

2. Court's Findings

Plaintiff fails to sufficiently establish that the Court has specific personal jurisdiction over Third Lane. "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015) (citing Doe v. Unocal Corp., 248 F.3d 915, 925-26 (9th Cir. 2001)). Neither is the fact that a parent company is "closely associated" with a subsidiary that itself has minimum contacts sufficient to establish personal jurisdiction. In re Boon Glob. Ltd., 923 F.3d 643, 650 (9th Cir. 2019).

Indeed, as a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary. Ranza, 793 F.3d at 1070 (citing United States v. Bestfoods, 524 U.S. 51, 61 (1998)). In certain limited circumstances, however, the veil separating affiliated entities may be pierced to impute liability from one entity to the other. Id. at 1071. After the Supreme Court's decision in Daimler AG v. Bauman ("Daimler"), a subsidiary's minimum contacts may only be imputed to a parent company if the parent and subsidiary are "alter egos." 134 S. Ct. 746, 759 (2014).

The alter ego doctrine is a "sparingly used" exception to the general principle that a corporation "is separate and distinct from its stockholders, officers, and directors, with separate and distinct liabilities and obligations." Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538-39 (2000). The purpose of the doctrine is to "prevent[] individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." Id. "California recognizes alter ego liability where two conditions are met: First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where 'adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice.'" In re Schwarzkopf, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting Wood v. Elling Corp., 20 Cal. 3d 353, 364 n.9 (1977)); see also Mesler v. Bragg Mgmt. Co., 39 Cal.3d 290, 300 (1985). Both factors must be met to establish alter ego liability. Mesler, 39 Cal. 3d at 300.

"Whether a party is liable under an alter ego theory is a question of fact" that depends on the "circumstances of each particular case." Leek v. Cooper, 194 Cal. App.

4th 399, 418 (2011). Factors courts have found relevant to the identity of interest analysis include: (1) the commingling of assets; (2) the treatment by an individual of corporate assets as his own; (3) the failure to obtain authority to issue stock; (4) the holding out by an individual that he is personally liable for the corporation’s debts; (5) the failure to maintain minutes or adequate corporate records, or the confusion of the records of separate entities; (6) an identity of equitable owners, directors, or officers of multiple entities; (7) the sole ownership of all stock by one individual or the members of a family; (8) the use of the same office or business location for multiple entities; (9) the employment of the same employees or attorneys; (10) undercapitalization; (11) the disregard of legal formalities; (12) the use of a corporation as a mere shell or conduit for a single venture or the business of an individual or other entity; and (13) the contracting with another with intent to avoid performance by use of a corporate entity to shield against personal liability. Assoc. Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 838-40 (1962) (collecting cases). Courts have found “inadequate capitalization, commingling of assets, [and] disregard of corporate formalities” to be especially “critical.” Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 1285 (1994). Even where there is a sufficient unity of interest, the alter ego doctrine cannot be invoked without evidence of misconduct or an injustice flowing from recognition of the separate corporate entity. Sonora, 83 Cal. App. 4th at 530.

Here, plaintiff fails to set forth evidence that justifies an alter ego finding. See generally Opp. Plaintiff’s only allegations in support of an alter ego theory are: (1) Third Lane acquired the Bird enterprise’s assets and continued that enterprise through subsidiaries that Third Lane owns and controls; and (2) Third Lane established a California LLC to conduct “E-vehicle rentals via smartphone application,” managed by its executives with a California agent for service of process. Opp. at 8 (citing Compl. ¶¶ 5-8; Dkt. 3-2; Dkt. 9 ¶ 6; Manapol Decl. ¶¶ 6-9, Exs. A-C).

These allegations, without more, are not sufficient to establish a unity of interest between Third Lane and any of its alleged subsidiaries, including Bird Rides, Blue Jay Transit, Inc., or Blue Jay Transit CFM, LLC. That Third Lane and its subsidiaries have an overlap in senior officers or directors is insufficient on its own to establish unity of interest. See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003) (holding that, absent a showing that a parent company has control over day-to-day activities of a subsidiary, overlap in senior officers and directors of the two entities is not sufficient to establish unity of interest). Neither can the Court infer

from plaintiff's bare allegation that Third Lane "owns and controls the entities who deliver, operate, and maintain Bird electronic scooters," Opp. at 8 (citing Compl. ¶ 6; Dkt. 3-2; Dkt. 9 ¶ 6), that Third Lane exercised day-to-day control over its alleged subsidiaries. See Ranza, 793 F.3d at 1073 ("Total ownership and shared management personnel are alone insufficient to establish the requisite level of control [under the alter ego theory]."). In short, plaintiff has not presented facts from which the Court could infer a disregard of corporate formalities, commingling of corporate funds, or failure to segregate records. To the contrary, Third Lane provides sworn declarations from its managing officers stating that Third Lane has "never conducted business in the state of California or maintained offices, employees, property, bank accounts, corporate operations, or business activities in the state" or "targeted California residents, entered into contracts in the state, marketed its services in California, or otherwise engaged in any conduct directed towards invoking the benefits and protections of California law." Dkt. 41-2 ¶¶ 5-7. And in any case, plaintiff has failed to establish inequity in absence of alter ego liability, a requisite showing to invoke the doctrine of alter ego. See Sonora, 83 Cal. App. 4th at 530.

Plaintiff fails to provide a proper basis, independent of her alter ego theory, upon which the Court may exercise jurisdiction over Third Lane. See generally Opp. To the extent that plaintiff objects to the form or execution of the Lyons Decl., the Court agrees with Third Lane that those objections do not cure the fundamental deficiency in plaintiff's jurisdictional allegations.

Accordingly, the Court concludes that plaintiff has failed to allege sufficient facts to establish a prima facie showing that the Court may exercise personal jurisdiction over Third Lane.

### C. Jurisdictional Discovery

Plaintiff argues that, if the Court finds that it lacks specific personal jurisdiction over Third Lane on the current record, she should be allowed to pursue jurisdictional discovery. Opp. at 10-11. In reply, Third Lane argues that the Court should deny plaintiff's request for jurisdictional discovery because she fails to come forward with any competent evidence suggesting that Third Lane maintains contacts with California sufficient to support personal jurisdiction and relies only on speculation. Reply at 13.

The district court has discretion to allow a plaintiff to conduct jurisdictional discovery. Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 430 n. 24 (9th Cir. 1977). Requests for such discovery should be granted “where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.” Butcher’s Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986). A district court, however, need not allow jurisdictional discovery where “it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction,” unless there are contested jurisdictional facts or more facts are needed. Laub v. U.S. Dep’t of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003).

While courts have permitted jurisdictional discovery in the alter ego context, see, e.g., Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int’l Missionary Soc., 298 F.R.D. 633, 645 (S.D. Cal. 2014), courts in this context have also required that plaintiffs offer some details “supporting [their] assertion[s] that discovery” will establish facts showing defendants are subject to the court’s jurisdiction, Yagman v. Kelly, No. CV176022MWFPJWX, 2018 WL 2138461, at *9 (C.D. Cal. Mar. 20, 2018). This requirement comports with the Ninth Circuit’s reasoning that where a plaintiff’s request for discovery is based on “little more than a hunch that it might yield jurisdictionally relevant facts,” its denial is within the district court’s discretion. Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (citation omitted).

Here, the only potential basis for the Court’s personal jurisdiction over Third Lane is through an alter ego theory. Plaintiff requests jurisdictional discovery without sufficiently providing an explanation of how discovery might change the outcome of the Court’s jurisdictional findings on that theory. See Opp. at 10-11. In her request, plaintiff relies on three separate filings with the California Secretary of State executed by Third Lane’s officers for Blue Jay Transit CFM, LLC and Bird Rides, contending that there exists a factual dispute as to whether Third Lane has conducted business in California. See Opp. at 10-11, Exs. A-C. Yet those filings merely show that Third Lane’s officers were involved in the organization and incorporation of its subsidiaries and do not go towards establishing day-to-day control over those subsidiaries. See Opp. at Exs. A-C. Thus, these filings do not sufficiently support her contention that discovery will establish facts showing that Third Lane is subject to this Court’s jurisdiction under the alter ego theory, and plaintiff’s proposed scope of discovery—e.g., “Third Lane’s role in its subsidiaries’ California operations, permits, and city contracts” and “the function of the

California entity that Third Lane's officers formed and manage" —amounts to no more than a mere hunch that the discovery would yield jurisdictionally relevant facts.

Further, Third Lane's CEO, Stewart Lyons, in a sworn declaration, denies that Third Lane has ever conducted business in California, targeted California residents, marketed its services in California, or otherwise engaged in any conduct directed towards invoking the benefits and protections of California law. Dkt. 41-2 ¶¶ 5-7. The declaration further states that Third Lane is a wholly separate, distinct, and adequately capitalized corporate entity that operates independently from Blue Jay Transit CFM LLC. Id. at ¶ 8. Plaintiff has not set forth any evidence that creates a factual dispute as to those assertions.

Moreover, even if plaintiff could discover facts supporting a finding of unity of interest between Third Lane and its California subsidiaries, plaintiff cannot establish that an inequitable, fraudulent, or unjust result will follow if the Court does not treat Third Lane as an alter ego of its subsidiaries. There are no facts to be discovered that could assist plaintiff in establishing the inequitable result requirement for an alter ego finding because Blue Jay—a viable defendant—remains before the Court. See Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938, 959 (N.D. Cal. 2015) (rejecting jurisdictional discovery request based on alter ego theory because a viable defendant remained in the case); Apple Inc. v. Allan & Assocs. Ltd., 445 F. Supp. 3d 42, 58 (N.D. Cal. 2020) (same).

Accordingly, plaintiff's request for jurisdictional discovery is denied.

### D. Transfer of Venue

Third Lane argues that, in the alternative to dismissal, the Court should transfer the action to the Western District of Tennessee pursuant to 28 U.S.C. § 1404(a). Mot. at 5. Third Lane argues that the action could have been brought in the Western District of Tennessee and that convenience and the interests of justice strongly favor transfer. Id. at 8-15.

In opposition, plaintiff argues that Third Lane has not carried its heavy burden under section 1404(a). Opp. at 12. Plaintiff argues that: her choice of forum should be accorded great weight; Memphis is no more convenient than Los Angeles to the defendants whose executives are based in Toronto, Ontario; Third Lane identifies no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-00444-CAS-SKx | Date | August 31, 2026 |
| Title | Tiana Marquardt et al v. Blue Jay Transit, Inc. et al | | |

witnesses in Tennessee, whereas her treating physicians are in California; the Subject Scooter and any other documentary evidence are in defendants' possession; judicial economy favors the Court retaining the action; and California has a strong local interest in securing redress for its injured residents. Id. at 12-14. However, plaintiff requests that, if the Court concludes that it lacks personal jurisdiction over Third Lane, it should then transfer the action to the Western District of Tennessee pursuant to 28 U.S.C. §§ 1406(a) and 1631 rather than dismiss Third Lane. Id. at 15.

In reply, Third Lane repeats its arguments for transfer pursuant to section 1404(a). Reply at 9-11.

Under 28 U.S.C. § 1631, whenever a "civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. "The purpose of the statute is to aid litigants who were confused about the proper forum for review, and to prevent any prejudice from such confusion when it is in the interests of justice[.]" Rodriguez-Roman v. INS, 98 F.3d 416, 423 (9th Cir. 1996) (internal citations and quotation marks omitted). To transfer a case pursuant to 28 U.S.C. § 1631, three criteria must be met: (1) the transferor court must lack jurisdiction, (2) the transferee court must have been able to exercise jurisdiction on the date the case was erroneously filed, and (3) the transfer must serve the interest of justice. Id. at 424.

Here, all three criteria are met: (1) the Court, as noted above, lacks jurisdiction over Third Lane; (2) it is uncontroverted that the Western District of Tennessee had jurisdiction over Third Lane on the date this case was erroneously filed in this Court, Mot. at 6-8, Opp. at 15; and (3) the transfer serves the interest of justice because Tennessee's one-year limitations period, Tenn. Code Ann. § 28-3-104(a)(1), has since expired, and dismissal could extinguish plaintiff's claims against Third Lane, while transfer preserves her original October 8, 2025 filing date, Opp. at 15. See Cruz-Aguilera v. I.N.S., 245 F.3d 1070, 1074 (9th Cir. 2001) ("Transfer in this case would serve the interest of justice by preventing unnecessary delay caused by requiring [Plaintiff] to re-file."); cf. McKeel v. Islamic Republic of Iran, 722 F.2d 582, 591 (9th Cir. 1983) (determining that transfer of action was "not necessary to advance the interests of justice" because appellants could refile within the statute of limitations). For the reasons discussed above, the Court finds that this case should be transferred to the Western

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| Case No. | 2:26-cv-00444-CAS-SKx | Date | August 31, 2026 |
|---|---|---|---|
| Title | Tiana Marquardt et al v. Blue Jay Transit, Inc. et al | | |

District of Tennessee. Given that the Court may transfer this action pursuant to section 1631, the Court need not consider whether transfer of venue pursuant to section 1404(a) is appropriate. Transfer renders moot Third Lane's motion to dismiss for lack of personal jurisdiction.

## V. CONCLUSION

In accordance with the foregoing, the Court **ORDERS** that this case be **TRANSFERRED** to the Western District of Tennessee pursuant to 28 U.S.C. § 1631. Third Lane's motion to dismiss is **DENIED** as moot. The Clerk of the Court is directed to effectuate the transfer.

IT IS SO ORDERED.

00 : 03

Initials of Preparer CMJ